# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BRENDA K. FICK,                                    Civ. No. 07-2536 (PJS/FLN)

       Plaintiff,

v.                                         **REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

Defendant has denied Plaintiff Brenda Fick's application for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. § 423.  Plaintiff filed a complaint seeking review of the denial of benefits on May 30, 2007.  The action is now before the Court on cross-motions for summary judgment.  Plaintiff is represented by Robert O. Blatti, Esq.  Defendant is represented by Lonnie F. Bryan, Assistant United States Attorney.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g), and it is properly before the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Local Rule 72.1.  For the reasons stated below it is recommended that Plaintiff's alternative motion for remand be granted  [Docket No. 12]; and Defendant's motion for summary judgment be denied [Docket No. 15].

## I.    PLAINTIFF'S BACKGROUND

Plaintiff Brenda Fick was fifty-one years old on the date of the ALJ's decision.  (Tr. 15). She has a high school education and some college classes.  (Tr. 403).  She has past relevant work as a loan processor, personal care attendant, and dishwasher.  (Tr. 130).  Plaintiff has also

1

worked at K-Mart counting sales receipts, encoding checks, and preparing bank deposits.  (Tr. 404).  This part-time work was not considered substantial gainful activity.  (Tr. 63, 72, 105).  Plaintiff alleges disability since July 1, 2002, due to osteoporosis, cancer, depression and anxiety.  (Tr. 60-62, 71, 74).

## II.     PROCEDURAL BACKGROUND

### A.     <u>Administrative Process</u>

Plaintiff filed an application for social security disability benefits on June 15, 2004.  (Tr. 60-62).  The application was denied initially and upon reconsideration.  (Tr. 39-56).  Plaintiff requested a hearing before an Administrative Law Judge.  A hearing was held before Administrative Law Judge Donald Holloway on April 27, 2006.  (Tr. 399-419).  On July 19, 2006, the ALJ issued an unfavorable decision.  (Tr. 14-24).  The Social Security Administration Appeals Council denied a request for further review.  (Tr. 5-7).  The denial of review made the ALJ's findings the final decision of the defendant.  42 U.S.C. § 405(g); <u>Browning v. Sullivan</u>, 958 F.2d 817, 822 (8th Cir. 1992); 20 C.F.R. § 404.981.  Plaintiff filed a complaint with this Court on May 30, 2007, seeking review of the denial of benefits.

### B.     <u>Medical Records</u>

During the relevant time period, Plaintiff was treated for a number of conditions including lymphoma, hypertension, depression, fibromyalgia, osteoporosis, and back pain.  Plaintiff frequently reported feeling fatigued.

#### 1.     Lymphoma and Hypertension

Plaintiff was diagnosed with malignant lymphoma in February 1998.  (Tr. 191).  She was treated with Leukeran for nine months.  She was then off treatment and in remission for three

and a half years.  Id.  In April 2002, Dr. Joseph Colgan of Mayo Clinic diagnosed Plaintiff with

small lymphocytic lymphoma/CLL, currently stable.  (Tr. 191, 189).  Dr. Colgan noted that

Plaintiff was being treated for elevated blood pressure, and her blood pressure control was not

optimal.  (Tr. 191).  Because a scan showed a little bit of increase in Plaintiff's lymph nodes, Dr.

Colgan recommended that she be evaluated again in three months.  (Tr. 190).  Her lymphoma

remained stable in July 2002.  (Tr. 188).

In November 2002, Plaintiff complained of fatigue, and Dr. Colgan noted that it might be

related to depression or to the beta blocker Plaintiff was taking.  (Tr. 185).  He noted that if

fatigue continued to be a big problem for her, he could arrange for someone to see her when she

returns for a recheck.  Id.

In May 2003, Dr. Colgan characterized Plaintiff's lymphoma as fairly stable.  (Tr. 182).

Her blood pressure was not well-controlled.  (Tr. 180).  Dr. James Gregoire and Dr. Charles

Nordstrom saw Plaintiff for hypertension.  (Tr. 178-181).  Plaintiff reported a ten-pound weight

gain from increased eating and napping.  (Tr. 178).  Dr. Gregoire stressed the importance of

exercise for blood pressure and fibromyalgia.  (Tr. 181).

Four months later, Dr. Colgan characterized Plaintiff's condition as a "slow progression

of what would now be called a CLL[1] with a couple of nodes."  (Tr. 176).  He recommended

continued observation.  Id.  Plaintiff's lymphoma was stable on her next visit in May 2004.  (Tr.

172).

---

[1] CLL stands for chronic lymphatic [syn. lymphocytic] leukemia, which is a variety of
leukemia characterized by an uncontrolled proliferation and conspicuous enlargement of
lymphoid tissue in various sites, and the occurrence of increased numbers of cells of the
lymphocytic series in the circulating blood and in various tissues and organs.  STEDMAN'S
MEDICAL DICTIONARY 989 (27th Ed. 2000).

Plaintiff saw Dr. Vincent Canzanello and Dr. David Yuan for evaluation of her hypertension in June 2004.  (Tr. 163-65).  Plaintiff reported chronic pain, and feeling stress and anxiety over her cancer.  (Tr. 165).  Dr. Canzanello believed that these issues contributed to her hypertension.  Id.  He noted that her overall control was not too bad, and recommended reducing her salt intake and adjusting her medications.  (Tr. 165-66).

**2.      Depression**

Plaintiff is treated by a psychiatrist, Dr. Dan Traiser.  (Tr. 145).  She first saw Dr. Traiser in June 1998.  (Tr. 282).  She reported life long depression, which had been much more stable once starting Prozac.  Id.  In the past, she worried to the point of having tachycardia.  Id.  She had also been obsessive about germs, and she double-checked doors to see if they were locked.  Id.  In spite of having lymphoma, she said "[n]ow is the most content I've ever been."  Id.  Dr. Traiser diagnosed major depressive disorder, recurrent, in remission.  (Tr. 283).

In June 1999, Plaintiff reported feeling exhausted, although she was taking a two-hour nap during the day, and sleeping nine hours at night.  (Tr. 280).  She was not exercising much, but did a little gardening.  Id.  She was finding work very difficult.  Id.  Dr. Traiser diagnosed her depression as mild.  Id.   Plaintiff's depression was in remission again in January 2000, and in partial remission in June 2000, when she was feeling tired and down.  (Tr. 279).  Her Prozac was increased.  (Tr. 277).  She was feeling better in August.  Id.  By October, her depression was in remission again.  (Tr. 276).

When Plaintiff saw Dr. Traiser in November 2001, she reported having a very bad summer.  (Tr. 274).  However, she had a new job, working fifteen hours per day, four days per week.  Id.  She said it was the best she felt in her life.  Id.

On May 2, 2002, Plaintiff reported having significant life stressors causing her to be irritable and angry. (Tr. 145). She had been placed on administrative leave in the nursing home where she worked. Id. Other stressors included her lymphoma returning, a family member's divorce, and attending three funerals in five days. Id. Since being on leave, she was sleeping very well, and her mood had stabilized. Id. Dr. Traiser noted that Plaintiff has a history of recurrent depression, now in remission. (Tr. 145).

When Plaintiff saw Dr. Traiser again in August 2002, her mood was fairly good, despite having been diagnosed with chronic lymphatic leukemia. (Tr. 144). She had a new job stocking shelves at K-Mart six hours a day. Id. She was gardening and walking for exercise, but felt fatigued. Id. Dr. Traiser noted that her affect was bright and calm, but she looked tired. Id. He diagnosed major depression, recurrent, in remission. Id.

In December 2002, Plaintiff reported that her condition had declined. (Tr. 143). Over the last six months, she felt exhausted. Id. Her oncologist did not believe her exhaustion was caused by the leukemia. Id. Plaintiff was feeling more depressed, she lost weight, she was not keeping up with her house and yard work, and she was sleeping excessively. Id. She had cut back her work hours to five hours a day, but still felt exhausted. Id. Dr. Traiser diagnosed major depression, recurrent, mild, and fatigue secondary to depression versus some other etiology. Id. Dr. Traiser recommended Provigil for her fatigue. Id.

In January 2003, Plaintiff was doing somewhat better. (Tr. 142). The Provigil was giving her more energy, although she still slept eight hours a night with a nap during the day. Id. Plaintiff denied having anxiety, and said she enjoyed her work at K-Mart. Id. In April, Plaintiff was doing well overall, despite being in a fair amount of pain at times. (Tr. 141). She was

sleeping well, and taking a three-hour nap during the day.  Id.  She denied problems with

concentration or anxiety.  (Tr. 141).  Plaintiff's mood remained about the same through October,

but she was a little down about the possibility of restarting chemotherapy.  (Tr. 140).

        In April 2004, Plaintiff reported significant improvement in her mood over the last few

months.  (Tr. 139).  She noted that chiropractic care was relieving a lot of her tension.  Id.

        Plaintiff was no longer working in July, and felt sad, weepy and irritable.  (Tr. 266).  Her

Prozac was increased.  Id.  It was increased again in August because she was not improving.  (Tr.

265).  Although this helped her mood a little bit, she said her mind would not shut down at night,

and she was tired during the day.  (Tr. 264).  Dr. Traiser recommended a trial of Clonazepam.[2]

Id.

        Several months later, Plaintiff reported that she hadn't been totally honest about her

mood over the last few years.  (Tr. 262).  She said she had several "breakdowns," which she

described as episodes of weeping and sobbing hysterically.  Id.  Dr. Traiser questioned why she

waited so long to tell him about these symptoms.  Id.  He also noted that on Plaintiff's last visit,

she was refiling for social security benefits.  Id.  He recommended that she see a therapist on a

regular basis.

        Plaintiff began treatment with psychologist Mary Kay Scwhinden-Schmidt on October 7,

2004.  (Tr. 261).  Plaintiff felt her vacillating mood might be the result of going off Depo

Provera after being diagnosed with osteoporosis.  Id.  Dr. Schwinden-Schmidt diagnosed major

depressive disorder, recurrent.  (Tr. 261).  One week later, Plaintiff was still depressed, with

---

        [2] Clonazepam is the generic version of Klonopin.  It is used for short-term relief from
symptoms of anxiety.  www.medicinenet.com/clonazepam/article.htm

surfacing anxiety.  (Tr. 260).  However, she was enjoying her volunteer work with other cancer patients.  Id.  On October 28, her energy was improved and her mood was fair.  (Tr. 258).  After she went off Provigil and decreased her Prozac, she was feeling much better.  (Tr. 257).

In December 2004, Plaintiff's depression appeared to be in remission.  (Tr. 253).  Dr. Traiser recommended that she ween off Prozac and start Cymbalta, because the Prozac might be contributing to her restless leg syndrome.  Id.  By the end of the month, Plaintiff was doing much better on Cymbalta.  (Tr. 250).  In January 2005, she said since starting the Cymbalta, it was the most calm she felt in her life.  (Tr. 248).  However, she continued to be exhausted after only two to four hours of work.  (Tr. 247).  In May 2005, Plaintiff's mood had significantly improved.  (Tr. 319).  In July, she denied problems with anxiety or anhedonia.  (Tr. 317).

In January 2006, Plaintiff told Dr. Schwinden-Schmidt that she was increasing her compulsive counting, which she felt might be hormonal or seasonal.  (Tr. 310).  Her energy was moderate, and her mood mildly down.  Id.  She was feeling much more rested in February.  (Tr. 309).

Plaintiff underwent a neuropsychological evaluation with Dr. Paula Bergloff on October 12, 2006, and November 27, 2006.  (Tr. 390).  Plaintiff reported that she had problems with learning, balance, short-term memory, depression, and sleep.  (Tr. 391-93).  Dr. Bergloff noted "[t]he question of an underlying neuropsychological deficit has been raised in the context of a history of chronic depression, lymphoma in February 1998, status post chemotherapy."  (Tr. 390).

Dr. Bergloff also noted that the history of Plaintiff's current problem dates back to problems with cognition since Plaintiff had an acoustic neuroma removed in 1996.  (Tr. 391).

Plaintiff reported that she believed the surgery affected her emotional, social, and cognitive functioning because she could no longer count or remember things.  (Tr. 391).  Dr. Bergloff also considered Plaintiff's history of back pain, depression, and difficulty sleeping.  (Tr. 392-93).

Dr. Bergloff evaluated Plaintiff by administering the Wechsler Adult Intelligence Scale-Third Edition, Wechsler Memory Scale-III, California Verbal Learning Test-II, Rey Complex Figure, Auditory Consonant Trigrams, Paced Auditory Serial Addition Test, Stroop, Trail Making, Integrated Visual and Auditory Continuous Performance Test, Wisconsin Card Sorting Test, Boston Naming Test, Controlled Oral Word Association, Sentence Repetition, Judgment of Line Orientation, Wide Range Achievement Test-3, Reading and Spelling, Nelson Denny Reading Comprehension, Test of Memory Malingering, Grip Strength, Finger Tapping, Grooved Pegboard, Personality Assessment Inventory, Beck Depression Inventory-II, and Beck Anxiety Inventory.  (Tr. 391).  Bergloff felt the results of testing were a reasonable estimate of Plaintiff's abilities.  (Tr. 394).

Testing showed a consistent pattern of executive function deficits.  (Tr. 396). Assessment of Plaintiff's mood showed mild depression, and severe anxiety.  Id.  Dr. Bergloff diagnosed cognitive disorder, NOS; major depressive disorder, recurrent, in partial remission; and anxiety disorder, NOS.  (Tr. 398). She opined:

> From a workability standpoint, there are a number of factors that interfere with this patient's ability to work competitively.  First and foremost is her poor stamina.  This is related to consequences of her multiple medical conditions.  She exhibits cognitive difficulties and has to work harder in order to perform (i.e. sustaining attention) at an acceptable level, which can also be fatiguing.  Chronic pain in her back can also be fatiguing as can her level of anxiety and stress.  Taken as a whole, I think this patient would be unable to work a competitive full-time job.  She does enjoy working; however, and remaining part-time for her

would be optimal.  I expect that she will work best in a position
that she is able to establish a good, clear routine.  She will have
difficulty in a position that requires a lot of problem solving.

(Tr. 397).

### 3.     Fibromyalgia, Back Pain and Osteoporosis

Plaintiff had an MRI of her lumbar spine in December 2002, which showed only mild degenerative changes.  (Tr. 244).  She saw Dr. Gabor Joo at Fergus Falls Medical Group and reported having severe back pain for a week.  (Tr. 230).  She was staying home from work.  Id. On examination, Dr. Joo noted that she had somewhat diminished lumbar lordosis with tense paraspinal muscles.  Id.  He kept her on her current medications.  Id.

Plaintiff was referred to rheumatologist James R. Carpenter, M.D. for evaluation of her arthralgias and myalgias on December 19, 2002.  (Tr. 131-33).  Plaintiff reported fatigue for the last five years, exacerbated by the removal of her left acoustic neuroma, and therapy for lymphocytic lymphoma B-cell type in 1998.  (Tr. 131).  Her fatigue is accompanied by spinal discomfort, which has also worsened since 1998 and is always present.  Id.  The discomfort is severe enough that at the end of some work days she is in tears.  Id.  In July, she decreased her work hours to five hours a day, but this does not seem to help.  (Tr. 131).

By history, Dr. Carpenter noted that Plaintiff is single, works at K-Mart, and has no children.  Id.  On examination, Plaintiff was in no acute distress, but appeared anxious.  (Tr. 132). All of the fibromyalgic tender points were positive.  (Tr. 133).  Dr. Carpenter's impression was as follows:

1.  Spinal myalgias, polyarthralgias, positive fibromyalgic tender points, and sleep disturbance all compatible with the diagnosis.

2.  Degenerative thoracolumbar disease, mild and perhaps

contributing to the above though a [moot] point given similar treatment.

3.  Small lymphocytic B-cell lymphoma, stable.

4.  Irritable bowel disease by history.

5.  Associated diagnoses of hypertension and depression.

(Tr. 133).  Dr. Carpenter recommended physical therapy and medication to improve sleep and reduce pain.  Id.  He also recommended that Plaintiff put the thought of disability on hold at the present due to "possible loss of self-worth and distraction as well as her having a difficult time obtaining given the definition being unable to do any gainful employment at all."  Id.

In April 2004, Plaintiff reported to Dr. Paul Etzell at Fergus Falls Medical Group that her chiropractor would no longer work on her because he did not think her back pain was muscular. (Tr. 219).  Plaintiff was referred to Mayo Clinic.  Id.

When Plaintiff saw Dr. Colgan in May 2004, she complained of increasing back pain in the last four months.  (Tr. 172).  Dr. Colgan noted that studies showed "DJD" [degenerative joint disease] and that her bone density was not good.  Id.  He also noted that she had been on Depo Provera for twenty years for endometriosis, which might be a contributing factor.  Id.  Plaintiff was referred to Dr. Vahab Fatourechi for evaluation of osteoporosis.  (Tr. 168, 171).

In June 2004, Plaintiff was referred to Dr. Andrea Boon at the Mayo Clinic Spine Center. (Tr. 166).  By history, Plaintiff reported back pain for many years, gradually getting worse.  Id. She had seen a chiropractor on and off for many years.  (Tr. 167).  Plaintiff reported significant improvement in her pain from working out three times a week.  Id.  Medications were not helpful, and one month of physical therapy had not helped.  Id.

Dr. Boon reviewed MRIs of Plaintiff's lumbar and thoracic spine taken on May 27, 2004.

(Tr. 169).  The MRIs showed moderate hypertrophic spondylotic changes throughout the lumbar and thoracic spine, with lumbar scoliosis, and significant disc narrowing, but without significant central or foraminal stenosis.  Id.  Dr. Boon also noted that Plaintiff's bone density showed a T-score of -2.6 in the lumbar spine and -1.2 in the hip.  Id.  Although Plaintiff had not sustained any compression fractures, the usual recommendation for patients with osteoporosis is to have a ten to fifteen pound lifting restriction.  Id.  Dr. Boon recommended physical therapy and exercise for pain management.  Id.

In October 2004, Plaintiff complained of joint pains all over.  (Tr. 218).  The next month, Plaintiff complained of a "jerking and pain in her legs at night."  (Tr. 156).  Dr. Colgan noted that it sounded like restless leg syndrome and referred Plaintiff to a neurologist.  Id.

Upon evaluation at Northwest Industrial Rehabilitation on April 14, 2005, the examining physical therapist felt that Plaintiff had "deconditioned musculature due to inactivity and thoracic issues related to osteoporosis."  (Tr. 347).  On May 5, 2005, Dr. Karen Andrews at Mayo Clinic diagnosed Plaintiff with mechanical low back pain, lumbar spondylosis, osteoporosis, fibromyalgia, hypertension, and chronic lymphocytic leukemia.  (Tr. 363).  After four weeks of therapy, Plaintiff's low back was feeling much better, although she had increased soreness from driving.  (Tr. 342).  She continued to improve with a second course of physical therapy.  (Tr. 331-39).

## C.  Hearing Before the ALJ

Plaintiff testified at the hearing before the ALJ on April 27, 2006.  (Tr. 399-419).  She lives alone in an apartment.  (Tr. 403).  At the time of the hearing, she was working at K-mart for eight to twelve hours a week, and between four and five hours in one day.  (Tr. 404).  Her last

11

attempt at full-time work was four years ago.  Id.

Plaintiff testified that she can not work more than eight to twelve hours a week because she is in pain and suffers physical and mental fatigue.  Id.  She takes a two to three-hour nap after work.  (Tr. 405).  Plaintiff testified that fatigue has consistently been a problem since she went through chemotherapy in 1998.  Id.

Plaintiff testified that she treats her back pain with Advil, Tylenol and bed rest.  (Tr. 407).  She testified that she was able to take a trip to California, and then Hawaii because she napped and did not do a lot of sightseeing.  (Tr. 408).  When at home, she gets her housework done on days when she has more energy.  (Tr. 410).

Plaintiff testified that she had an acoustic neuroma removed from her left ear, and lost her hearing in that ear.  (Tr. 410).  This causes her difficulty in concentrating when more than one person is speaking at once.  (Tr. 410-11).  Her concentration also decreases when she is fatigued. (Tr. 411).

The ALJ asked Plaintiff whether she has problems with compulsive counting.  (Tr. 411). Plaintiff testified that she engages in compulsive counting once or twice a week, when she is anxious or tired.  (Tr. 411).  She also testified that she is a compulsive handwasher, but she doesn't believe these traits interfere with her work.  (Tr. 411-12).

Plaintiff testified that she worked as a loan processor off and on for twelve to fifteen years.  (Tr. 415).  She testified she could no longer do that due to stress, and her physical inability to work a full eight-hour day.  Id.

A vocational expert, David Samlaska, also testified at the hearing.  (Tr. 415).  The ALJ posed a hypothetical question concerning the work a 48 to 51-year-old woman with Plaintiff's

education and work history could perform, if she was limited to lifting fifteen pounds while keeping objects close to her body, with the flexibility to alternate sitting and standing, and in a quiet cubicle or a room with only one other person talking.  (Tr. 416).  The VE testified that such a person could perform Plaintiff's past relevant work as a loan processor.  (Tr. 417).  If the hypothetical person had the additional limitation of not having the stamina to work seven and a half to eight hours a day, five consecutive days, then the person could not perform Plaintiff's past relevant work.  Id.

The ALJ asked the VE whether there are any other jobs, under the first hypothetical, that a such person could do.  (Tr. 418).  The VE testified that there are not.  (Tr. 418-19).

### D.      The ALJ's Decision

At the first step of the disability evaluation process, the ALJ found that the claimant has not engaged in substantial gainful activity since the alleged onset of disability date.  (Tr. 23). At the second step of the evaluation, the ALJ found that the claimant has an impairment or combination of impairments considered severe based on the requirements in the regulations.  (Tr. 23 citing 20 C.F.R. § 404.1520(c)).

The third step in the evaluation process requires the ALJ to consider whether the claimant has an impairment or combination of impairments that meet or equal an impairment listed in Appendix 1, Subpart P of the regulations. 20 C.F.R. §§ 404.1520(d), 404.1525.  The ALJ concluded that Plaintiff does not have a physical or mental impairment that meets or medically equals any listed impairment.  (Tr. 23).

Step four requires the ALJ to first determine Plaintiff's residual functional capacity ("RFC") and then consider whether the claimant can still do the work he has done in the past.  20

C.F.R. §§ 404.1520(e) and (f), 404.1565.  Determination of RFC requires consideration of the evidence taken as a whole, including not only objective medical evidence, but also the subjective complaints expressed by the claimant.  Polaski v. Hecker, 739 F.2d 1320, 1321-1322 (8th Cir. 1984).  In evaluating those subjective complaints, the ALJ must consider the objective medical evidence or its absence, along with prior work record and observations by third parties, and treating and examining physicians.  Polaski, 739 F.2d at 1322.  The ALJ determined that the claimant's allegations regarding her limitations were not entirely credible, and the claimant has a sedentary residual functional capacity.  (Tr. 23).  The ALJ concluded that the claimant's medically determinable impairments do not preclude her from performing her past relevant work as a loan processor.  (Tr. 24).  Thus, the ALJ concluded that the claimant was not under a disability as defined in the Social Security Act.  (Tr. 24 citing 20 C.F.R. § 404.1520(f)).

E.   **Appeals Council**

Plaintiff submitted Dr. Bergloff's neuropsychological report of November 27, 2006 to the Appeals Council for review of the ALJ's decision.  The Appeals Council stated:

> We also looked at report dated November 27, 2006 from Paula Bergloff, Ph.D.  The Administrative Law Judge decided your case through July 19, 2006.  This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 19, 2006.
>
> If you want us to consider whether you were disabled after July 19, 2006, you need to apply again.  We are returning the evidence to you to use in your new claim.

(Tr. 6).

III.   **STANDARD OF REVIEW**

Judicial review of defendant's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Morse v. Shalala, 32 F.3d 1228, 1229 (8th Cir. 1994).  Substantial evidence is enough evidence that a reasonable person might accept as adequate to support a conclusion. Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001).  Where such evidence exists, a court is required to affirm defendant's factual findings.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  On the other hand, the analysis must include evidence in the record which detracts from the weight of the evidence supporting the ALJ's decision.  Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). Thus, the court must consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary.  Id.

IV.    DISCUSSION

Plaintiff asserts that the Appeals Council erred by concluding that the new evidence she submitted, Dr. Bergloff's report, did not relate to the period prior to the ALJ's decision and was not material.  Plaintiff concludes that because new evidence from an examining and treating medical source indicates that Plaintiff is disabled from full-time work,  the Commissioner's decision must be reversed and benefits awarded.  Alternatively, Plaintiff asks the court to remand for the ALJ to consider the new evidence.  If the court decides to remand, Plaintiff asks the court to instruct the ALJ to clarify his finding regarding Plaintiff's severe impairments at step two of the evaluation process.[3]

_____

[3] Plaintiff does not challenge the ALJ's denial of disability benefits based on the ALJ's findings regarding Plaintiff's severe impairments, but only asks the court to instruct the ALJ to clarify his findings if the court orders a remand on the issue of the new evidence.  Therefore, the court will only address the step two evaluation if remand to the ALJ is required.

Defendant asserts that the ultimate determination of whether a claimant is disabled rests with the Commissioner; therefore, Dr. Bergloff's opinion that Plaintiff can not work a competitive full-time job is not dispositive.  Defendant contends that even if the ALJ had Dr. Bergloff's evaluation before him, and the ALJ considered Bergloff to be a treating physician, the ALJ would have discounted the opinion as not supported by the medical record and inconsistent with other record evidence.  Specifically, Defendant notes that Dr. Traiser never found Plaintiff to have a loss of cognitive functioning.

20 C.F.R. § 404.970(b) provides for mandatory review of certain Social Security cases by the Appeals Council.  See Williams v. Sullivan, 905 F.2d 214, 215-16 (8th Cir. 1990) (citing the regulation).   It provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

Thus, "the Appeals Council MUST consider the additional evidence if the additional evidence is  (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Williams, 905 F.2d at 216; see also Wilkins v. Secretary, Dept. of Health and Human Servs., 953 F.2d 93, 95 (8th Cir. 1991) (regulation requires Appeals Council to consider new and material evidence, even though it may ultimately decline review).  The mere timing of the examination does not determine whether the additional evidence is new and material.  Williams,

905 F.2d at 216.

Evidence is new if it is not duplicative or cumulative.  Wilkins, 953 F.2d at 96.  The

medical evidence is material if it relates to the claimant's condition on or before the date of the

ALJ's decision.  Williams, 905 F.2d at 216 (citing Basinger v. Heckler, 725 F.2d 1166, 1169 (8th

Cir. 1984); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989)).  Evidence is material

only if the condition complained of was at issue before the ALJ.  Id. at 216, n.8 (citing Sanchez

v. Secretary of Health and Human Servs., 812 F.2d 509, 511 (9th Cir. 1987).  Furthermore,

"[e]vidence is material if there is a reasonable possibility that the new evidence would have

changed the outcome."  See Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954,

956 (4th Cir. 1985).  Evidence is not material if it merely "detail[s] after-acquired conditions or

post-decision deterioration of a pre-existing condition."  Bergmann v. Apfel, 207 F.3d 1065,

1069-70 (8th Cir. 2000).  A reviewing court may remand the case to the Appeals Council if it

failed to consider new and material evidence.  Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir.

1992) (citing Williams v. Sullivan, 905 F.2d 214, 217 (8th Cir. 1990)).

The Appeals Council in this case erred by refusing to consider Dr. Bergloff's

neuropsychological evaluation of November 27, 2006, merely because the evaluation was done

after July 19, 2006, the date of the ALJ's decision in Plaintiff's case.  See Williams, 905 F.2d at

216 (finding mere timing of examination does not determine whether evidence is new and

material).  Remand is required only if Dr. Bergloff's evaluation was both new and material.

Dr. Bergloff's evaluation is new because it is not duplicative or cumulative.  See Wilkins,

953 F2d at 96.  Although Dr. Bergloff reviews the history of Plaintiff's mental and physical

impairments, which is duplicative, the purpose of the evaluation was to determine whether there

17

CASE 0:07-cv-02536-PJS-FLN   Document 18   Filed 07/25/08   Page 18 of 21

was a neuropsychological deficit underlying Plaintiff's difficulty with learning, balance, short-term memory, depression, and sleep.  (Tr. 390-92).  Plaintiff had not previously undergone neuropsychological testing; therefore, the evidence is new.

There are several factors to consider in determining whether the evidence is material. The first is whether the evidence relates to the claimant's condition on or before the date of the ALJ's decision.  See Williams, 905 F.2d at 216.  In Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000), the Eighth Circuit found evidence to be new and material where the new evidence contained a treating psychologist's opinion that Plaintiff was disabled by depression, where Plaintiff had a history of depression and anxiety before her alleged onset date.  Similar circumstances exist here.

Part of the purpose of Dr. Bergloff's evaluation was to determine whether there was an underlying neurocognitive deficit in relation to Plaintiff's condition, including her history of depression.  Plaintiff had a long history of depression, which appeared in the administrative record reviewed by the ALJ.   This aspect of Dr. Bergloff's evaluation relates to claimant's depression on or before the ALJ's decision.

Dr. Bergloff also diagnosed Plaintiff with severe anxiety.  There are references in the administrative record reviewed by the ALJ of Plaintiff suffering various anxiety symptoms. (Tr. 165, 260, 264, 282, 310).  This aspect of Dr. Bergloff's evaluation also relates to claimant's condition on or before the ALJ's decision.

Plaintiff did not specifically cite a cognitive deficit as a basis for disability, and evidence is not material if it involves a condition not complained of before the ALJ's decision. However, at the hearing, Plaintiff testified to having difficulty with concentration.  (Tr. 410-11).

In an Activities of Daily Living Questionnaire, Plaintiff stated that after her impairment began, she was unable to concentrate on her duties at work. (Tr. 81). She also stated that she must go over any mental activities two to three times, including reading and "doing anything with numbers" before she can concentrate. (Tr. 85).

Plaintiff also completed a "Function Report - Adult" at the request of the Social Security Administration on January 24, 2005. (Tr. 111-129). In this report, she states, "since acoustic neuroma in 1996, I've lost concentration, comprehension, memory" and "short term memory is gone" (Tr. 116). In a "Function Report - Adult (Third Party)," Plaintiff's mother noted that Plaintiff has a hard time keeping her balance, and that the acoustic neuroma affected Plaintiff's balance. (Tr. 120, 124). Therefore, Dr. Bergloff's evaluation of whether Plaintiff had a cognitive deficit relates to a condition that Plaintiff complained of before the ALJ's decision.

Finally, evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Dr. Bergloff's report might have changed the outcome of the disability evaluation for several reasons. First, based on neuropsychological testing that had not been previously performed, Dr. Bergloff found Plaintiff's anxiety to be severe. (Tr. 398). Dr. Bergloff specifically noted that "this patient presents a fairly calm and placid demeanor, but internally her anxiety is quite high." (Tr. 397). This explains why the level of Plaintiff's anxiety may not have been discovered before testing, and suggests that anxiety should have been considered as one of Plaintiff's severe impairments.

Second, Dr. Bergloff diagnosed a cognitive disorder, which could account for Plaintiff's difficulty in concentration, memory, and attention. (Tr. 396, 398). Dr. Bergloff noted that these

types of deficits have been noted in the literature regarding cognitive problems following removal of an acoustic neuroma.  (Tr. 396).  This information, when considered together with Plaintiff's other impairments, might tip the scales in favor of a finding of disability.

Finally, Dr. Bergloff opined that Plaintiff would be unable to work a competitive full-time job.  (Tr. 397).  An examining physician's opinion that is based on neuropsychological testing may be entitled to substantial weight when considered as part of the record as a whole.  See generally, Wagner v. Astrue, 499 F.3d 842, 848-49 (8th Cir. 2007) (describing procedure for evaluating weight given to physicians' opinions).  For these reasons, Dr. Bergloff's evaluation is new and material evidence, and the Appeals Council erred by failing to consider it.  The remedy, however, is not remand to the ALJ.  The appropriate remedy is to remand to the Appeals Council to consider the new and material evidence.  Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992).

## V.    RECOMMENDATION

For the foregoing reasons, it is hereby recommended that:

1.  Plaintiff's Alternative Motion for Summary Judgment be granted [Docket No. 12];

2.  The case be remanded to the Appeals Council for further proceedings consistent with this opinion;

3.  Defendant's Motion for Summary Judgment be denied [Docket No. 15].


DATED: July 25, 2008

s/ Franklin L. Noel
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 13, 2008,** written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words.  A judge shall made a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.